**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Hong Lu (SBN 280219)
Hong.lu@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, CA 90071
Tel: (213) 250-1800

Minyao Wang (*pro hac vice* admitted)
minyao.wang@lewisbrisbois.com
7 World Trade Center
250 Greenwich Steet, 11th Floor
New York, NY 10007
Tel: (212) 232-1300

*Attorneys for Plaintiff Weijie Xu*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Weijie Xu, an individual,

Plaintiff,

v.

Ganfeng Lai, an individual,
Jintao Jiang, an individual, and
Sino Fortune Group LLC,
a California limited liability company,

Defendants.

CASE NO. 25-cv-02587-MRA-SSC

**PLAINTIFF WEIJIE XU'S OPPOSITION TO SINO FORTUNE GROUP, LLC'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ..... 1

A. FACTS WHICH FORTUNE DOES NOT DISPUTE ..... 3

B. The *Ex Parte* TRO Regarding the Luxury Home ..... 4

LEGAL STANDARD ..... 4

ARGUMENT ..... 6

A. Mr. Xu has Standing and Has Plausibly Pleaded that Sino Fortune Group, LLC is a Shell Company that Serves as the Alter Ego of its Managing Member Ms. Jiang ..... 6

1. The Luxury Home was Transferred for No Value when the Defendants were Presumptively Insolvent thereby Satisfying the Test for Both Intentional and Constructive Fraudulent Transfer ..... 7

a. Fortune Does Not Dispute the Numerous Badges of Fraud Underlying the Transfer of the Luxury Home and Thereby Concedes the Defendant's Illicit Intent ..... 9

b. Fortune Does Not Dispute that the Defendants Transferred the Luxury Home for No Value ..... 10

c. Fortune Does Not Dispute that Mr. Lai and Ms. Jiang are Extensively Indebted and Insolvent ..... 10

B. A Motion to Dismiss is Usually Not a Place to Decide Statute of Limitations Issues ..... 11

C. The Three Year Limitations Period in the New York Convention May be Equitably Tolled ..... 13

1. Fleeing and Concealing Oneself for the Purpose of Evading Liability will Toll the Three Year Limitations Period in the FAA ..... 17

a. Mr. Lai and Ms. Jiang's Flight from their Chinese Judgment Debt Tolled the Three Year Limitations Period in the FAA ..... 19

2. COVID-19 was an Intervening Extraordinary Event that Independently Provides Grounds to Equitably Toll the Three Year Limitations Period in the FAA ..... 20

D. The Judgment is Valid and Enforceable and can be Recognized and Enforced in this District Against Mr. Lai and Ms. Jiang, their Shell Company Sino Fortune Group, LLC and their Property ..... 21

1. Fortune's Contention that the Judgment is Not a Judgment under the Recognition Act is Borderline Frivolous....................22

E. Mr. Xu Has Adequately Pleaded Punitive Damages ............................24

CONCLUSION..........................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. by & Through Turner v. Google LLC*,
737 F. Supp. 3d 869 (N.D. Cal. 2024)....12

*Alger Dynamic Opportunities Fund v. Acadia Pharms. Inc.*,
756 F. Supp. 3d 852 (S.D. Cal. 2024)....11

*ASARCO, LLC v. Union Pac. R. Co.*,
765 F.3d 999 (9th Cir. 2014)....11

*BCB Holdings Ltd. v. Gov't of Belize*,
110 F. Supp. 3d 233 (D.D.C. 2015)....14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)....4

*Blue Line Foodservice Distribution, Inc. v. Cathcart*,
No. 24-CV-1250-W-MMP, 2025 WL 1265859 (S.D. Cal. Apr. 30, 2025)....9

*Branch v. Tunnell*,
14 F.3d 449 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)....5

*De Jesus v. UnitedHealth Grp.*,
No. CV-22-00532-PHX-DJH, 2023 U.S. Dist. LEXIS 11194 (D. Ariz. Jan. 23, 2023)....14

*DeSoto v. Yellow Freight Sys., Inc.*,
957 F.2d 655 (9th Cir. 1992)....5

*Edmonson v. Eagle Nat'l Bank*,
922 F.3d 535 (4th Cir. 2019)....17

*Everplay Installation Inc. v. Guindon*,
471 Fed. Appx. 812 (10th Cir 2012)....12, 13

*Everplay Installation, Inc. v. Guindon*,
Civil Action No. 08–cv–00824–PAB–CBS, 2009 WL 4693884 (D. Colo. Dec. 2, 2009)....16

*Foss v. Nat'l Marine Fisheries Serv.*,
161 F.3d 584 (9th Cir. 1998) .......... 17

*Gov't of Lao People's Democratic Republic v. Baldwin*,
No. 2:20-CV-00195-CRK, 2021 WL 3007251 (D. Idaho July 15, 2021) .......... 7

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,
896 F.2d 1542 (9th Cir. 1990) .......... 4

*Hernandez v. City of El Monte*,
138 F.3d 393 (9th Cir. 1998) .......... 11

*Holland v. Florida*,
560 U.S. 631 (2010) .......... 15

*In re Intelligent Direct Mktg.*,
518 B.R. 579 (E.D. Cal. 2014) .......... 9, 10

*Johnson v. Henderson*,
314 F.3d 409 (9th Cir. 2002) .......... 17, 18

*Lemus v. Rite Aid Corp.*
613 F.Supp.3d 1269 (C.D. Cal. 2022) .......... 4, 5

*Lindsey v. Punta Vista Bahia SA*,
No. CV-17-04596-PHX-JJT, 2018 U.S. Dist. LEXIS 100490 (D. Ariz. June 15, 2018) .......... 14

*Move, Inc. v. Citigroup Global Markets, Inc.*,
840 F.3d 1152 (9th Cir. 2016) .......... 14, 15, 16

*Naoko Ohno v. Yuko Yasuma*,
723 F.3d 984 (9th Cir. 2013) .......... 21

*Neitzke v. Williams*,
490 U.S. 319 (1989) .......... 4

*NuVasive, Inc. v. Absolute Med., LLC*,
71 F.4th 861 (11th Cir. 2023) .......... 16

*PT Rahajasa Media Internet v. Telecomm. & Informatics Fin. Provider & Mgmt. Ctr.*, No. 20CIV11035PGGOTW, 2022 WL 992841 (S.D.N.Y. Apr. 1, 2022) .......... 13

*Rabin v. Google LLC*, 725 F.Supp.3d 1028 (N.D. Cal. Mar. 26, 2024) .......... 12

*Santa Maria v. Pac. Bell*, 202 F.3d 1170 (9th Cir.2000) .......... 18

*Seattle Audubon Soc. v. Robertson*, 931 F.2d 590 (9th Cir. 1991) .......... 17

*Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex*, 989 F.2d 572 (2d Cir. 1993) .......... 13

*Severs v. Garcia*, No. 24-CV-01456-EMC (EMC), 2025 WL 2458862 (N.D. Cal. Aug. 25, 2025) .......... 7

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) .......... 5

*Van Andel v. Lindberg*, 732 F. Supp. 3d 476 (M.D.N.C. 2024) .......... 13, 22

*Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977 (9th Cir. 2002) .......... 4

*Wang v. Zymergen Inc.*, 744 F. Supp. 3d 995 (N.D. Cal. 2024) .......... 11

*Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199 (9th Cir.2006) (en banc) (per curiam) (plurality opinion) .......... 21

**Statutes**

9 U.S.C.A. § 207 .......... 13, 14, 15, 19

Cal. Civ. Code §3439.01 .......... 7

Cal. Civ. Code § 3439.04 .......... 9,10

Cal. Civ. Proc. Code § 1721 ........ 11, 23

Criminal Law ........ 20

FAA Section 9 ........ 14

FAA Section 12 ........ 14, 15

California's Uniform Foreign-Country Money Judgments Recognition Act ........ 20, 21, 22, 23

**Chinese Statutes**

PRC Civil Procedure Law, Art. 248 ........ 19

PRC Arbitration Law, Art. 62 ........ 19

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ........ 4, 5, 11

Fed. R. Civ. P. 8 ........ 23

Fed. R. Civ. P. 9 ........ 23

## PRELIMINARY STATEMENT[1]

Sino Fortune Group LLC's ("Fortune") Motion to Dismiss (ECF No. 48) the First Amended Complaint (the "FAC") (ECF No. 24) is meritless. As set forth in Mr. Xu's Reply in support of a preliminary injunction, Fortune already concedes that (i) Ganfeng Lai ("Mr. Lai") and Jintao Jiang ("Ms. Jiang") personally guaranteed the Loan on a joint and several basis; (ii) in a duly entered Award, the Chinese Arbitration Court found Mr. Lai and Ms. Jiang liable; (iii) a Chinese court has authorized Mr. Xu to enforce and execute on the Award and Fortune does not dispute this aside from raising a borderline frivolous semantics dispute; (iv) Mr. Lai and Ms. Jiang have refused to pay a staggering amount of debt as ordered by final Chinese court decisions, have been publicly listed by their national government as Distrusted Persons and have a history of transferring assets across international borders to frustrate and evade creditors; (v) Fortune is a shell company controlled by Mr. Lai and Ms. Jiang and owns the Luxury Home which was transferred from Ms. Jiang to Fortune for no consideration last year. Indeed, Plaintiff recently discovered that Ms. Jiang personally pledged the Luxury Home (with an estimated value of $16 million) as collateral for a $6 million loan. *See* Deed of Trust attached to the Fourth Declaration of Minyao

[1] Capitalized terms not otherwise defined herein have the same meaning ascribed to them in the Plaintiff's First Amended Complaint (ECF No. 24) (the "FAC"), the Memorandum of Law in Support of Pltf's. Ex. Parte Application for a Temporary Restraining (ECF No. 25-1) ("Ex Parte MOL"), and Plaintiff Weijie Xu's Reply in Further Support of Preliminary Injunction (ECF No. 53).

LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

Wang, as Ex. 1 This document, subject to judicial notice, provides further compelling proof that Fortune is a shell for Mr. Lai and Ms. Jiang.

The FAC asserts two fraudulent transfer claims against Fortune. These claims, governed by the Uniform Fraudulent Transfer Act (the “Transfer Act”), are straight-forward. Mr. Xu is a creditor and Ms. Jiang is a debtor under the Transfer Act by virtue of the Chinese Award and the Chinese Judgment alone. This status is not impacted by Mr. Xu’s request to domesticate the Award and the Judgment under U.S. law. Ms. Jiang unquestionably transferred the Luxury Home to Fortune in a transaction tainted with traditional badges of fraud. Contrary to Fortune’s repeated assertions that there is no indication that Ms. Jiang is insolvent, the Transfer Act automatically presumes that she is insolvent because she owes a staggering amount of debt to her creditors. *See* CCP § 3439.02(b). The law provides that it is her burden to overcome this presumption. She has not and cannot do so.

Much of Fortune’s brief is a thinly-disguised attempt to make arguments for the absent Mr. Lai and Ms. Jiang who have refused to file any pleadings in this Court despite clear orders by this Court that they do so with respect to any objections that they may have to Preliminary Injunction. These arguments (besides being meritless) are irrelevant to the two claims at issue against Fortune.[2]

[2] For example, Fortune attached two documents (Exhibit A and Exhibit B) to the motion to dismiss. As an initial matter, neither document is accompanied by a declaration from a person confirming its authenticity, let alone from a person with (footnote continued)



LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

### A. FACTS WHICH FORTUNE DOES NOT DISPUTE

Plaintiff hereby incorporates by reference the facts that Fortune does not dispute as set out in Mr. Xu's Preliminary Statement at § A. *See* ECF No. 53 at 5.

Critically, Fortune offers nothing to rebut that it is "a shell entity controlled by [Ganfeng] Lai and [Jintao] Jiang." *See* FAC at 2:19 – 2:22. It would be strange if Fortune did seek to dispute this allegation given that it appears to be in possession of oddly specific (albeit implausible and unsupported) information regarding Mr. Lai and Ms. Jiang's alleged payment under the Award, MTD 8:14 – 8:17[3] and the purported travel history of Mr. Lai.

---

personal knowledge. Mr. Lai and Mr. Jiang cannot have it both ways. They cannot refuse to appear before this court (to the point of defying court orders to respond to the Preliminary Motion) while at the same time use their alter ego, Fortune, to smuggle in documents that could only have come from them. Nor can the court consider these exhibits. Exhibit A is a purported letter from a third party to Mr. Lai dated April 24, 2018. This document is outside the four corners of the FAC and not referenced in or incorporated by the complaint. It therefore cannot be considered in a motion to dismiss. Moreover, as discussed in Mr. Xu's reply in support of preliminary injunction, Mr. Xu is listed as the sole lender in the Loan Agreement, he is listed as the claimant in the Award and he is listed as the sole plaintiff in the Judgment. To the extent that there was any issue concerning Mr. Xu's "standing," that was an issue for the Chinese court or the Chinese arbitrators. Exhibit B purports to be the unauthenticated entry records of Mr. Lai (notwithstanding the statements made in the motion, this Exhibit does NOT contain records for Ms. Jiang). But these are relevant, if at all, for a personal jurisdiction motion to be filed by Mr. Lai. **Neither Exhibit is remotely relevant to the two fraudulent transfer claims brought against Fortune.**

[3] It is black-letter law that this assertion of payment, which is false, cannot be raised in a motion to dismiss where all complaint allegations are presumed to be true.

Fortune also admits that it owns the Luxury Home. MTD 9:12 – 9:14. It also does not dispute that the Luxury Home was recently transferred for no consideration from Ms. Jiang to Fortune. FAC ¶ 49.

**B. The *Ex Parte* TRO Regarding the Luxury Home**

On August 22, 2025, this Court granted an *ex parte* TRO regarding the Luxury Home (the "TRO"). ECF No 26. In the TRO the Court found credible the allegations, which neither Fortune nor the absent Mr. Lai and Ms. Jiang disputed in the briefing in opposition to ordering a preliminary injunction or in Fortune's motion to dismiss, that Mr. Lai and Ms. Jiang "owe numerous creditors large amounts of money and are listed as 'Distrusted Persons' by the Chinese Supreme Court." TRO at 8. ECF Nor did Defendants dispute in any pleading that Mr. Lai and Ms. Jiang have engaged in extensive cross-border transfers of assets to evade their creditors. *Id*.

**LEGAL STANDARD**

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007). '"Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations."' *Id* (citing *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). Rather, "[o]n a motion to dismiss, a court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the

plaintiff." *Lemus v. Rite Aid Corp.* 613 F.Supp.3d 1269, 1275 (C.D. Cal. 2022).

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555, n.19 (9th Cir. 1990). Under the incorporation by reference doctrine, the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002). The court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

The Ninth Circuit has a liberal policy favoring amendments, and thus leave to amend should be freely granted." *Lemus*, 613 F. Supp. at 1275 (C.D. Cal. 2022) (citing *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992)).[4]

---

[4] Mr. Xu recently notified Defendants that he contemplates filing a Second Amended Complaint. Defendants have so far refused to consent which is unsurprising given their history of evasion. Mr. Xu reserves the right to seek Court leave imminently to amend. Defense counsel have also refused (again unsurprising) to provide a service address for Defendants Lai and Jiang notwithstanding the assertion that they live in China. Defendants Lai and Jiang apparently are seeking refuge in the false belief that this Court cannot exercise personal jurisdiction over them to the extent that they live (footnote continued)



LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

## ARGUMENT

### A. Mr. Xu has Standing and Has Plausibly Pleaded that Sino Fortune Group, LLC is a Shell Company that Serves as the Alter Ego of its Managing Member Ms. Jiang

Fortune does not controvert the fact that it is a shell company beneficially owned by Mr. Lai and Ms. Jiang, and admits that it owns the Luxury Home. *See* MTD at 12:18 – 13:2; see also FAC at Ex. 7. Indeed, as late as March 2024, Ms. Jiang was identified as the managing member of Fortune. FAC at Ex. 7; *see also* Second Wang Decl at Ex. F, 2 – 3, 4. Fortune's business address and Ms. Jiang's address as of 2017 were both listed as the address of the Luxury Property. Second Wang Decl at Ex. F, 2 – 3. Fortune cannot contest this fact in good faith given that Ms. Jiang signed the loan in her personally capacity pledging the interest in the Luxury Home as collateral. The Defendants' interest in the Luxury Home is subject to levy via the Award and the Judgment. And Fortune's liability for participation in the fraudulent transfer of the Luxury Home which removed $6 million in equity via a loan to Ms. Jiang secured by the Luxury Home renders Mr. Xu's injury "fairly traceable" to Fortune's purchase

---

in China (which Mr. Xu currently disputes). To the extent that they live in China, they are still amendable to jurisdiction under (i) California's specific personal jurisdiction law, (ii) FRCP 4(k)(2) and/or (iii) the special jurisdictional rule for in rem enforcement of the property owned by a debtor. *See, e.g.*, *Shaffer v. Heitner*, 433 U.S. 186, 204, 210 n.36 (1977) ("Once it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter."). Mr. Xu will articulate these alternative jurisdictional bases in the forthcoming amended complaint.

and transfers of the Luxury Home. That is, Fortune's participation in the diminution of the available equity in this asset of the Defendants harmed Mr. Xu, and Mr. Xu has standing to pursue his claims against Fortune.

### ***1. The Luxury Home was Transferred for No Value when the Defendants were Presumptively Insolvent thereby Satisfying the Test for Both Intentional and Constructive Fraudulent Transfer***

Fortune's explanation that the real estate transaction underlying Mr. Xu's fraudulent transfer claim was "nothing more than a routine financing requirement" is vague, and certainly that representation does not foreclose the likelihood that Mr. Lai and Ms. Jiang are removing equity from the Luxury Home for their personal benefit in an attempt to evade their numerous creditors. *See e.g.* MTD 9:12 – 9:14, 12:21 – 13:2.

Fortune admits that the Luxury Home was originally purchased by Fortune for $11.88 million in 2017. See MTD at 19:11; *see also Id*. at Ex. D. The fact that Fortune might have bought the home before Mr. Lai and Ms. Jiang obtained the Loan from Mr. Xu is not relevant. There is no requirement that the fraudulent transaction reflect the exact money that Mr. Xu loaned to Mr. Lai and Ms. Jiang. The test here is whether Ms. Jiang had ownership intertest in the Luxury Home at the time of the transfer. She clearly did as she pledged the Luxury Home in her personal capacity for a loan! She could have used the Luxury Home to repay her creditors. But she unsurprisingly failed to do so. That is exactly the conduct that fraudulent conveyances laws are designed to prohibit.



LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

Moreover, under the Transfer Act, a domesticated U.S. judgment is not necessary for plaintiff to prevail on a fraudulent transfer. Under the Transfer Act, a creditor "means a person that has a claim," a claim means "right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured" and debtor means "a person that is liable on a claim." Cal. Civ. Code §3439.01. By virtue of the Award and Judgment issued in China alone, Ms. Jiang is a debtor and Mr. Xu is a creditor for purposes of the Transfer Act. The was made evident recently in the Northern District of California where Judge Chen permitted fraudulent transfer claims to go forward on the basis of evasion of a **Canadian** Judgment and independently of any U.S. domestication procedures. *Severs v. Garcia*, No. 24-CV-01456-EMC (EMC), 2025 WL 2458862, at *11 (N.D. Cal. Aug. 25, 2025); *accord Gov't of Lao People's Democratic Republic v. Baldwin*, No. 2:20-CV-00195-CRK, 2021 WL 3007251, at *6 (D. Idaho July 15, 2021) (permitting a fraudulent transfer claim to proceed based on attempts to evade a foreign arbitral award).

The relevant test for fraudulent conveyances is (i) if a transfer from Ms. Jiang to Fortune took place and (ii) if it was accompanied by badges of fraud (for an actual fraudulent transfer claim) or if equivalent value was obtained by Ms. Jiang and if Ms. Jiang became insolvent at the time or as a result of the transfer (for a constructive fraudulent transfer claim). Fortune fails to explain what "routine financing" meant. But its purpose is actually irrelevant. Simply put, Ms. Jiang had ownership and

control of the Luxury Home to the point where she used it as collateral for a personal loan. Yet she transferred that home (valued at $16 million) back to Fortune, instead of paying her creditors as she was obligated to under the Award and the Judgement. ***That is the essence of a fraudulent transfer***.

a. Fortune Does Not Dispute the Numerous Badges of Fraud Underlying the Transfer of the Luxury Home and Thereby Concedes the Defendant's Illicit Intent

Because of Fortune's failure to dispute the numerous badges of fraud pleaded in the FAC, or facts raised elsewhere in this action that support those badges of fraud it is easy to infer, at least for purposes of denying a motion to dismiss, Defendants' illicit intent to evade Mr. Xu's collection efforts via the fraudulent transfer that withdrew $6 million in equity from the Luxury Home. Fortune does not dispute that Mr. Lai and Ms. Jiang incurred significant civil judgment liabilities in China. FAC at ¶97(d). It did not dispute that Mr. Lai and Ms. Jiang "owe numerous creditors large amounts of money and are listed as 'Distrusted Persons' by the Chinese Supreme Court." TRO at 8. Fortune does not dispute that Mr. Lai and Ms. Jiang have engaged in extensive cross-border transfers of assets to evade their creditors. FAC at 97(g) – (h). Fortune does not dispute that Mr. Lai and Ms. Jiang have consistently failed to pay their debts under the Judgment and that they are presumptively insolvent as a result. FAC ¶ 97(e). And they cannot dispute that Fortune is an insider of Ms. Jiang as she controls it and can even pledge its sole asset as loan collateral. Their actual intent to hinder, delay, and defraud their creditor Mr. Xu can be reasonably inferred

from these facts at the motion to dismiss stage. See e.g., *Blue Line Foodservice Distribution, Inc. v. Cathcart*, No. 24-CV-1250-W-MMP, 2025 WL 1265859, at *8 (S.D. Cal. Apr. 30, 2025) (stating that under 9(b), a fraudulent conveyance claim survived a motion to dismiss even if a small number of badges were pled and even if the allegations were "at times conclusory.'').

b. Fortune Does Not Dispute that the Defendants Transferred the Luxury Home for No Value

Fortune does not and cannot dispute that the Luxury Home was transferred for no value from Ms. Jiang to Fortune in April 2024. *See* FAC at ¶49, and Ex. 7 (showing a gift deed for no consideration). Nor can it based on these damning facts be plausibly inferred that Ms. Jiang received anything remotely equal to reasonably equivalent value. This satisfies the first prong to show a constructive fraudulent transfer. *See* Cal. Civ. Code § 3439.04(a)(2); *see also, In re Intelligent Direct Mktg.*, 518 B.R. 579, 587 (E.D. Cal. 2014) (stating the first prong of a constructive fraudulent transfer as "the debtor made the transfer without receiving reasonably equivalent value in exchange").

c. Fortune Does Not Dispute that Mr. Lai and Ms. Jiang are Extensively Indebted and Insolvent

Fortune repeatedly asserts that Mr. Xu cannot show that Ms. Jiang was insolvent at the time of the transfer the time of the transfer of the Luxury Home from her to Fortune or as a result of the transfer. Fortune has it backward. Given that Fortune does not dispute that Mr. Lai and Ms. Jiang are extensively indebted to the

point of being designated as Distrusted Persons by the Chinese government, and that they have undertaken a cross-border campaign to evade paying their debt, Ms. Jiang is presumed to be insolvent as matter of law. *See* Cal. Civ. Code § 3439.04(a)(2)(B); *see also*, *In re Intelligent Direct Mktg.*, 518 B.R. 579, 587 (E.D. Cal. 2014) (stating the second prong as the debtor "was insolvent at the time, or was rendered insolvent by the transfer or obligation."). Under well-settled law, Ms. Jiang has the burden of rebutting this presumption. She has not and cannot do so credibly, given the massive debt that she owes under final Chinese court judgments.

Fortune has likely already circumvented Mr. Xu's ultimate recovery by encumbering the Luxury Home to remove $6 million in cash from the equity in the Luxury Home. It is quite plausible that Mr. Lai and Ms. Jiang have taken $6 million in cash from the equity in the Luxury Home and fled once again.

**B. A Motion to Dismiss is Usually Not a Place to Decide Statute of Limitations Issues**

As an initial matter, Fortune fails to explain why it would have any standing to raise questions about the statute of limitation under U.S. domestication procedures. It is not the judgment debtor. It is the recipient of a fraudulent transfer from a judgment debtor. As explained above, a fraudulent transfer claim can be based alone on an intent to evade paying a foreign judgment by the foreign judgment debtor. Any statute of limitation defense concerning domestication procedures can be raised only by Mr. Lai and Mr. Jiang who have not appeared before this Court, to the point of ignoring a



LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

Court order to explain why preliminary injunction should not be entered against them. Putting the lack of standing aside, Fortune's argument on statute of limitations is a red herring. Mr. Xu seeks to enforce the Award *or in the alternative* the *Judgment*. Under the time limitation provision of the Uniform Foreign-Country Money Judgments Recognition Act (the "Recognition Act"), as codified in CCP § 1721, the statute of limitation for enforcement of a *judgment* is the lesser of ten years or of the judgment's effective time range under foreign law. In the motion to dismiss, Fortune brazenly claims without any support that the statute of limitation under Section 1721 is two years, in defiance of the plain text of the statute. Because Fortune cannot contend that the Judgment is time barred, its (incorrect) argument on statute of limitation for the Award becomes irrelevant and the Court can stop its analysis here.

With respect to Fortune's argument that enforcement of the Award is time barred, this issue is unsuitable for resolution on a Fed. R. Civ. P. 12(b)(6) motion to dismiss. If the "asserted defense raises disputed issues of fact, dismissal under Rule 12(b)(6) is improper." *Wang v. Zymergen Inc.*, 744 F. Supp. 3d 995, 1006 (N.D. Cal. 2024) (quoting *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014)). This is because the determination of whether a claim is time-barred often involves fact-intensive inquiries like, as here, whether the statute of limitations has been tolled. *Alger Dynamic Opportunities Fund v. Acadia Pharms. Inc.*, 756 F. Supp. 3d 852, 879–80 (S.D. Cal. 2024) (holding that generally the timeliness of a claim depends on matters outside the pleadings) (quoting *Hernandez v. City of El Monte*,



LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

138 F.3d 393, 402 (9th Cir. 1998) (citations omitted)). Mr. Xu has plausibly pleaded that equitable tolling applies to his petition to confirm the Award, given that his diligent enforcement efforts have been stymied by the COVID-19 pandemic and the flight of Mr. Lai and Ms. Jiang from China to the United States (or at a minimum the transfer of funds from China to purchase a $14 million home in this country) to evade their creditors. FAC at ¶¶58, 70; *see also* FAC Ex. 2, at 2 (Mr. Xu is listed as the lender in the first line of the Loan Agreement).

Because Mr. Xu has '"simply … plead[ed] facts demonstrating a potential factual dispute that could affect whether the [statute of limitations] defense applies'" his claims survive a motion to dismiss. *A.B. by & Through Turner v. Google LLC*, 737 F. Supp. 3d 869, 878 (N.D. Cal. 2024), (quoting *Rabin v. Google LLC*, 725 F.Supp.3d 1028, 1031 (N.D. Cal. Mar. 26, 2024)). Fortune's own case supports the proposition that whether tolling is appropriate cannot be decided at this stage. *Everplay Installation Inc. v. Guindon*, 471 Fed. Appx. 812 (10th Cir 2012) (in a case involving potential cross-border movement of the judgment debtors, like the case at bar, the issue had to be decided after a ***bench trial***.)

**C. The Three Year Limitations Period in the New York Convention May be Equitably Tolled**

The Chinese Arbitration Court rendered the Award in favor of the Applicant, Mr. Xu, on August 16, 2019. *See* FAC Ex. 1, at 1, 25. The normal period to seek to enforce an arbitral award under the Federal Arbitration Act's codification of the New

York Convention is three years (the "FAA"). *See* 9 U.S.C.A. § 207.[5]

Fortune misleadingly claims in its motion that "[h]owever, other circuits have strictly applied § 207's three-year period for confirmation of a foreign award as mandatory and dismissed petitions to confirm as untimely or refused to toll for lack of diligence." There is simply no support for the first half of this sentence, which attempts to create the mistaken impression that other circuit courts have held that no tolling is available under the § 207. However, the two appellate decisions Fortune cites say no such thing. The Second Circuit case, *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex*, 989 F.2d 572 (2d Cir. 1993), does not address tolling at all, let alone conclude that tolling is not available. Indeed, the very fact that Fortune's own Southern District of New York case, *PT Rahajasa Media Internet v. Telecomm. & Informatics Fin. Provider & Mgmt. Ctr.*, No. 20CIV11035PGGOTW, 2022 WL 992841 (S.D.N.Y. Apr. 1, 2022), decided after *Seetransport*, wrestled with whether tolling was appropriate under particular circumstances, shows that tolling *is available* in the Second Circuit, contrary to

---

[5] The Fourth Circuit and courts within that Circuit routinely hold that the three year statute of limitations along with the one year limitation for domestic awards are permissive, meaning that "it does not bar confirmation of the award beyond a three-year period." *See Van Andel v. Lindberg*, 732 F. Supp. 3d 476, 482-84 (M.D.N.C. 2024) (relying on Fourth Circuit precedent and the language of § 207 to hold that a foreign award may be enforced in the United States after the expiration of the three year deadline). It appears that the Ninth Circuit has not directly decided this issue either way. But resolution of this question is not necessary because the three year limitation under Section 207 is eligible for tolling under Ninth Circuit law and Mr. Xu has easily met the requirement for tolling at the motion to dismiss stage.

LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

Fortune's insinuation. Fortune's second appellate case, *Everplay Installation*, expressly affirmed that tolling under Section 207 is available under appropriate circumstances. In addition, Fortune misleadingly cites to *BCB Holdings Ltd. v. Gov't of Belize*, 110 F. Supp. 3d 233 (D.D.C. 2015). **The court in that case expressly determined that tolling was available AND found that the petitioner "satisfied the criteria for equitable tolling."** *Id.* at 245. Fortune's **repeated** case mis-citations here and its opposition to preliminary injunction are not well-taken and frankly raise basic questions about its candor to the Court. And in any event, Fortune fails to cite to ***single*** case that determined that tolling is not available under 207. Its insinuation to the contrary is false.

Fortune acknowledges that the Ninth Circuit expressly decided in *Move, Inc. v. Citigroup Global Markets, Inc.*, 840 F.3d 1152, 1157 (9th Cir. 2016) that the FAA is subject to equitable tolling. Its feeble attempt to limit this holding to Section 12 of the FAA is entirely unpersuasive. As an initial matter, lower courts in the Ninth Circuit ***have already applied*** the teaching of *Move* to Section 207 and the domestic statute of limitation, Section 9 of the FAA. *See Lindsey v. Punta Vista Bahia SA*, No. CV-17-04596-PHX-JJT, 2018 U.S. Dist. LEXIS 100490, at *7-8 (D. Ariz. June 15, 2018) (citing *Move* and holding that the time limit under 207 can be tolled in appropriate circumstances); *De Jesus v. UnitedHealth Grp.*, No. CV-22-00532-PHX-DJH, 2023 U.S. Dist. LEXIS 11194 (D. Ariz. Jan. 23, 2023) (same result for Section 9 under *Move*). Second, the specific analysis employed by the Ninth Circuit in *Move*

applies with equal, if not greater, force to Section 207. The Ninth Circuit determined that equitable tolling is available for Section 12 motions based on three factors articulated by the U.S. Supreme Court in *Holland v. Florida*, 560 U.S. 631 (2010). First, the Ninth Circuit held that the language of Section 12, that a motion "must be served" within three months is not "usually generous" or "unusually emphatic." *Move, Inc.* 840 F.3d at 1157. Therefore, according to the Ninth Circuit, the text of Section 12 "does not preclude equitable tolling" under Supreme Court caselaw.

Second, the court held that the FAA as a whole is compatible with tolling. *Id.* Third, Ninth Circuit also concluded that allowing tolling is compatible with the purpose of the FAA and will in fact "enhance both the accuracy and fairness of arbitral outcomes." *Id*. at 1158. Here, Section 207 states that "[w]ithin three years after an arbitral award falling under the Convention is made, any party to the arbitration *may apply* to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration." (emphasis added). If the language in Section 12 providing that a motion "***must*** be served upon" an adversary does not foreclose tolling (as the Ninth Circuit has decided in a controlling opinion) then Fortune cannot argue in good faith that the much weaker language in Section 207 ("***may*** apply" within three years) is inconsistent with tolling. The other factors identified by the Ninth Circuit in *Move* related to the structure and purpose of FAA are the same regardless of what section of the FAA is being analyzed.

Therefore, notwithstanding Fortune's attempt to use misleading cases, there is



LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

no doubt then that the three year period under the FAA to enforce an arbitral award can be tolled under *Move. Accord NuVasive, Inc. v. Absolute Med., LLC,* 71 F.4th 861, 874-75 (11th Cir. 2023) ("We find the Ninth Circuit's reasoning thorough and persuasive. We therefore agree with our sister circuit that the availability of equitable tolling does not contravene the FAA's text, structure, or purpose"). )

As set forth immediately below, Mr. Xu amply meets the bar for surviving a motion to dismiss on the issue of tolling.

***1. Fleeing and Concealing Oneself for the Purpose of Evading Liability will Toll the Three Year Limitations Period in the FAA***

The Northern District of California in *Forti v. Suarez-Mason* explained the federal equitable tolling standard as encompassing two possible applications: (i) as a type of '"impossibility' doctrine" where "extraordinary events beyond plaintiff's control prevent a plaintiff from bringing his claim"; and (2) applying the fraudulent concealment "principle" underlying the doctrine to "situations where a defendant flees and conceals himself for the purpose of avoiding liability for the acts at issue in plaintiff's suit." 672 F. Supp. 1531, 1550 (N.D. Cal. 1987). The court's reasoning in *Forti* regarding the second branch of equitable tolling is persuasive under the circumstances. Where a defendant flees to avoid liability "his conduct may be regarded as fraudulently contriving to conceal himself for the purpose of having the limitations period run" and a limitations period should be tolled accordingly. *Id*; *see also Everplay Installation, Inc. v. Guindon*, Civil Action No. 08–cv–00824–PAB–CBS, 2009 WL 4693884, at *6 (D. Colo. Dec. 2, 2009) (holding that a plaintiff may



LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

be entitled to the application of equitable tolling where a defendant concealed information about the defendant's location, preventing the plaintiff from bringing the claim).

Courts in the Ninth Circuit do not appear to have had the opportunity to take the recommendation of the Ninth Circuit Court of Appeals' that *Forti* contains "[a]n excellent discussion of these principles of equitable tolling" and apply its reasoning to develop a branch of equitable tolling precedent based on a defendant's flight from enforcement. *Seattle Audubon Soc. v. Robertson*, 931 F.2d 590, 595 (9th Cir. 1991) (citing *Forti* and finding that "Federal courts have applied the doctrine of equitable tolling in two generally distinct kinds of situations[,]" and noting one branch of tolling is situations involving "some kind of wrongful conduct on the part of the defendant"); *see also Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 590 (9th Cir. 1998) (citing *Forti* and noting without application that "equitable tolling proper where defendant … flees to avoid liability"); *but cf Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 549 (4th Cir. 2019) (citing, among others, the Ninth Circuit's decision in *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002) as a correct statement of equitable tolling in explaining confusion recognized by the Supreme Court among courts regarding three doctrines that toll limitations periods on equitable grounds, and holding that "equitable tolling 'differs from [fraudulent concealment and equitable estoppel] in that it does not assume a wrongful—or any—effort by the defendant to

LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

prevent the plaintiff from suing."') (addition original).[6]

To the extent that courts in the Ninth Circuit other than the court in *Forti* have considered analogous facts showing "some kind of wrongful conduct on the part of the defendant" (but not ever considering fleeing to avoid liability) that prevented the plaintiff from timely filing a claim they have done so under the doctrine of equitable estoppel. *See e.g.*, *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002) ("Equitable estoppel, on the other hand, 'focuses primarily on the actions taken by the *defendant* in preventing a plaintiff from filing suit.'") (quoting *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir.2000)).

a. Mr. Lai and Ms. Jiang's Flight from their Chinese Judgment Debt Tolled the Three Year Limitations Period in the FAA

The outcome is the same whether the effect of fleeing to avoid liability is examined under *Forti*'s equitable tolling application or the more general equitable estoppel precedent, the three year statute of limitations must be tolled. But given that the *Forti* decision's flight-related equitable tolling standard remains controlling precedent directly applicable to the circumstances here where Mr. Xu alleges that Mr. Lai and Ms. Jiang fled China to avoid payment of their debt to Mr. Xu the three year statute of limitation under the FAA must be equitably tolled.

[6] The Fourth Circuit sometimes conflates labeling of the three equitable doctrines it discusses. It qualifies its definition of equitable tolling three times by noting that its analysis is based on its own definition of "the tolling doctrine this opinion terms 'equitable tolling.'"



LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

Mr. Xu has been pursuing his rights to the arbitral award diligently since at least December 12, 2019. Mr. Xu sought and obtained an enforcement ruling from the Shenzhen Intermediate People's Court to compel Mr. Lai and Ms. Jiang to comply with the Award. *See* FAC Ex. 5, at 4; *see also* Fang Decl. (ECF No.54) Ex. 4, PRC Arbitration Law, Art. 62; *and see* Ex. 5 PRC Civil Procedure Law, Art. 248. Mr. Xu was hindered in his enforcement efforts between the date he obtained the enforcement ruling on December 12, 2019, and the date he originally initiated this suit on March 24, 2025 due to the flight of Mr. Lai and Ms. Jiang from China to avoid paying their debt. FAC ¶¶ 47, 58. In the interim, Mr. Xu undertook "a global search" for Mr. Lai and Ms. Jiang "first in the Asia and Pacific region and later expanding to the United States and Western Europe." *Id*. at ¶ 47. Mr. Lai and Ms. Jiang have engaged in a campaign to prevent Mr. Xu from seeking enforcement of the Award by Mr. Xu. FAC at ¶ 91. The three year limitations period under 9 U.S.C. § 207 can be tolled on these facts where Mr. Xu was unable to initiate an action because he did not know where Mr. Lai and Ms. Jiang had fled to with their assets.

***2. COVID-19 was an Intervening Extraordinary Event that Independently Provides Grounds to Equitably Toll the Three Year Limitations Period in the FAA***

The three year statute of limitations under 9 U.S.C. § 207 can also be tolled under the first branch of the equitable tolling standard because of an intervening extraordinary circumstance that prevented filing of this instant suit. Mr. Xu's enforcement efforts including his ability to locate Mr. Lai and Ms. Jiang and their

assets in China were stymied by China's pursuit of a zero-Covid policy for three years from 2020 to the beginning of 2023.[7] FAC ¶ 58. The COVID-19 pandemic and its attendant lockdowns were a well-known extraordinary event that prevented the orderly administration of justice around the globe, and in China, and the three year statute of limitations should be tolled on that basis.

**D. The Judgment is Valid and Enforceable and can be Recognized and Enforced in this District Against Mr. Lai and Ms. Jiang, their Shell Company Sino Fortune Group, LLC and their Property**

The Shenzhen Intermediate People's Court issued the Judgment (aka the Enforcement Ruling) on December 12, 2019. *See* FAC Ex. 5, at 4. It is within the ten year period for enforcement under the Recognition Act. The time limits for filing an application with the People's Court for a ruling of non-enforcement (e.g., vacating the

---

[7] On January 31, 2020, the Supreme Court of China issued a press release that noted the court in Shenzhen was closed from January 30, 2020 "due to the ongoing novel coronavirus outbreak" and further stated that "[c]ase hearings should be postponed" and that "Courts at all levels should strictly implement the Criminal Law to effectively punish people who interfere in disease prevention and control." Supreme People's Ct. of China, *Courts close but services continue through outbreak*, China Daily, Jan. 31, 2020, https://english.court.gov.cn/2020-01/31/c_766758.htm, (last visited Oct. 28, 2025 at 10:56 A.M.). China's zero-COVID policy prompted repeated lockdowns in Guangdong Province after January 2020 until the policy was officially ended on January 08, 2023. *See e.g.* Muyu Xu, Ryan Woo, Roxanne Liu, *China's Dongguan is latest southern city to be hit by COVID-19*, Reuters, June 21, 2021 8:16 AM EDT, https://www.reuters.com/world/china/dongguan-becomes-latest-city-chinas-guangdong-be-hit-by-covid-19-2021-06-21/ (last visited Oct. 28, 2025 at 11:19 A.M.) *see also* The Lancet, *The end of zero-COVID-19 policy is not the end of COVID-19 for China*, https://www.thelancet.com/journals/lanwpc/article/PIIS2666-6065(23)00020-2/fulltext (last visited Oct. 28, 2025 at 11:09 A.M.).



LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

Judgment) has expired except for the limited circumstances where there is forged evidence or arbitrator misconduct. *See* Fang Decl. at ¶ 42(c). Defendant has not identified evidence that it has pursued the fraud or misconduct based non-enforcement ruling; and for all of its machinations regarding the form of the Judgment, the Defendant does not deny that the Judgment remains effective in China. The Judgment is final and conclusive and once it is domesticated under the Recognition Act it will be enforceable in this District.

### *1. Fortune's Contention that the Judgment is Not a Judgment under the Recognition Act is Borderline Frivolous*

As previously detailed in his Reply in further support of a preliminary injunction, the Chinese court decision submitted by Mr. Xu to this Court, regardless of its label, carries the substantive and binding legal effect of a judgment under Chinese law. Fang Decl. at ¶ 17; and see Fang Decl. at Ex. 1. Whether the document is termed an Enforcement Ruling or Judgment "does not affect its eligibility for recognition and enforcement under PRC law." *Compare* Fang Decl., at ¶ 17, *with* Li Decl, Ex. A, Third Pary Independent Legal Opinion of Xiang Lyu, at 16. Indeed the "issuance of an Enforcement Ruling necessarily follows judicial review of the arbitral award's validity, procedural integrity, and compliance with public policy." Fang Decl. at ¶ 18, 35. The Enforcement Ruling carries the substantive legal effect of ordering that the Award may be executed through the state power of the Chinese Government. Fang Decl. at ¶ 18, 41. It is therefore a judgment entitled to recognition under the Recognition Act, as adopted in California. *See e.g. Naoko Ohno v. Yuko Yasuma*, 723



LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

F.3d 984, 990 (9th Cir. 2013) (finding that "enforceability of judgments of courts of other countries is generally governed by the law of the state in which enforcement is sought.") (citing *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1212 (9th Cir.2006) (en banc) (per curiam) ("Yahoo! II ") (plurality opinion)). Indeed, as Mr. Fang explains, the Chinese legal procedures that Mr. Xu invoked to obtain the Chinese Court decision to recognize the Award was the ***only avenue*** under Chinese law to recognize and enforce an arbitral award. Fang Decl. ¶ 19. Fortune here wants this Court to accept a view of Chinese law under which a domestic arbitral award can never be domesticated in a legally binding way. Mr. Fang shows that this border-line frivolous position is not computable with Chinese law.

The Recognition Act also squarely rejects Fortune's position. That Act was drafted by the National Conference of Commissioners on Uniform State Laws. In their official comments to the Recognition Act the Commissioners noted that "[a] judgment of a foreign court confirming or setting aside an arbitral award . . . would be covered by [the] Act." *See* § 1C-1851, cmt. 3.[8] In effect, Fortune invites the Court to read the Recognition Act in a manner expressly rejected by the official comments to the Act. Last year the Chief Judge for the Middle District of North Carolina firmly declined such an invitation. In *Van Andel v. Lindberg*, 732 F. Supp. 3d 476, 485 (M.D.N.C. 2024), the court rejected the "proposition that the foreign court must label

[8] A link to the official comments to the Recognition Act can be found here: https://tlblog.org/wp-content/uploads/2024/04/2005-Uniform-Act.pdf

a judgment as such or must 'explicitly adopt' a money judgement." Because the Judgment expressly identifies the Award, and the parties by their Chinese national identification numbers and addresses, and expressly states that the Award is legally binding and authorizes Mr. Xu to execute against the assets of the adverse parties, including Mr. Lai and Ms. Jiang it may be recognized under the Recognition Act. *See id.*; *see also* FAC, Ex. 5 at 7 – 9, 10.[9]

### E. Mr. Xu Has Adequately Pleaded Punitive Damages

As Fortune acknowledges, Cal. Civ. Code § 3294 provides the governing substantive law for punitive damages, but the heightened pleading standard contained therein "irreconcilably conflicts" with Rules 8 and 9 of the Federal Rules of Civil Procedure. *Clark v. Allstate Ins. Co.*, 106 F. Supp. 2d 1016, 1018 (S.D. Cal. 2000) (*citing Bureerong v. Uvawas*, 922 F.Supp. 1450, 1480 (C.D.Cal.1996)). "Rules 8(a) and 9(b) therefore preclude district courts from applying a heightened pleading for allegations of malice or fraudulent intent." *Id*. at 1019; *accord Tovmasyan v. Target Corp.*, No. 2:25-CV-02314-MRA-KS, 2025 WL 1288020, at *7 (C.D. Cal. May 2, 2025). So, fraud may be averred generally. *Jackson v. East Bay Hosp.*, 980 F.Supp. 1341, 1353–54 (N.D.Cal.1997); *see also Grecco v. Sanofi Winthrop Pharmaceuticals*, No. C–96–3876 FMS, 1997 WL 68551, at *4, 1997 U.S. Dist. LEXIS 23391, at *12–

[9] Contrary to Fortune's assertion, foreign-language documents submitted to the Court by Mr. Xu were accompanied by a translator's certification. *See* ECF No. 3-5 and 24-6.

LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

13 (N.D.Cal. Feb. 13, 1997).

Mr. Xu has alleged with detailed particularity that the actual fraudulent transfer of the Luxury Home was done with "actual intent" and lists nine badges of fraud from which the Defendants' fraudulent intent can be inferred. See FAC ¶97. Because the actual fraudulent transfer caused Defendants to fail to make (or be able to make) payments in satisfaction of the Award and/or Judgment, Mr. Xu has been injured. *Id.* at ¶ 93. Accordingly, punitive damages is warranted.

**CONCLUSION**

For the foregoing reasons, the Motion to Dismiss should be denied. In alternative, Mr. Xu should be permitted to amend.

DATED: October 29, 2025 LEWIS BRISBOIS BISGAARD & SMITH LLP

By: */s/ Minyao Wang*
MINYAO WANG
**LEWIS BRISBOIS BISGAARD & SMITH LLP**

Minyao.Wang@lewisbrisbois.com
7 World Trade Center
250 Greenwich Steet, 11th Floor
New York, NY 10007
Tel: (212) 232-1300

HONG LU
Hong.Lu@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

*Attorneys for Plaintiff WEIJIE XU*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff certifies that this brief does not exceed 6995 words and therefore complies with Local Rules of this District.

DATED: October 29 2025 LEWIS BRISBOIS BISGAARD & SMITH LLP

By: /s/ Minyao Wang
MINYAO WANG
Attorneys for Plaintiff WEIJIE XU