UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-02587-MRA-SSC | Date | December 23, 2025 |
| Title | *Weijie Xu v. Ganfeng Lai et al.* | | |

| | |
|---|---|
| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| Priscilla Deason for Melissa H. Kunig | None Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING REQUEST FOR PRELIMINARY INJUNCTION [34] AND DENYING MOTION TO DISMISS [48]**

Before the Court is Petitioner's Request for a Preliminary Injunction, ECF 34, and Defendant Sino Fortune Group LLC's Motion to Dismiss, ECF 48. The Court read and considered the moving, opposing, and reply papers and held a hearing on December 8, 2025. ECF 59. For the reasons stated herein, the Court **GRANTS** Petitioner's Request for a Preliminary Injunction and **DENIES** Sino Fortune Group LLC's Motion to Dismiss.

## I. BACKGROUND

This case's factual background is set forth in the Court's August 22, 2025, Order Granting Petitioner/Plaintiff Weijie Xu's ("Xu" or "Petitioner") First Ex Parte Application for Temporary Restraining Order (ECF 25) ("First TRO Order"). ECF 26. The Court incorporates that factual recitation herein.

In short, Xu's First Amended Complaint ("FAC") seeks to enforce an arbitral award rendered by the Shenzhen Arbitration Commission and recognized by the Shenzhen Intermediate People's Court in Shenzhen, China, against Defendants Ganfeng Lai ("Lai") and Jintao Jiang ("Jiang") (collectively, "the Individual Defendants"). Xu alleges that Lai and Jiang are a married couple currently residing in the Central District of California who control Defendant Sino Fortune Group, LLC ("Sino Fortune"), a California limited liability company. *Id.* ¶¶ 1–4.[1]

Petitioner alleges three counts for (1) confirmation, recognition, and enforcement of arbitration award under the New York Convention, 9 U.S.C. §§ 201 *et seq.*, against the Individual

[1] Lai, Jiang, and Sino Fortune are collectively referred to herein as "Defendants."

Defendants; (2) confirmation, recognition, and enforcement of foreign country money judgment pursuant to the Uniform Foreign Money Judgment Act against the Individual Defendants, Cal. Code Civ. Proc. §§ 1713 *et seq.*; (3) confirmation, recognition, and enforcement of foreign country money judgment under principles of international comity against the Individual Defendants; (4) constructive fraudulent conveyance pursuant to Cal. Civ. Code §§ 3439.04(a)(2) *et seq.* against all Defendants; and (5) actual fraudulent conveyance pursuant to Cal. Civ. Code §§ 3439.04(a)(1) *et seq.* against all Defendants. ECF 24.

### A. First TRO

On August 17, 2025, Xu filed an Ex Parte Application for Temporary Restraining Order ("First TRO Application") to freeze the sale of a luxury home located in Arcadia, California ("Luxury Home") that, based on an investigation, Xu believes is owned by Sino Fortune, which in turn is owned and controlled by the Individual Defendants. ECF 25. On August 22, 2025, the Court considered the factors set forth in *Winter v. National Resource Defense Council, Inc.* 555 U.S. 7 (2008), and granted the First TRO Application, ECF 26. The Court determined that Xu satisfied Federal Rule of Civil Procedure ("Rule") 65(b)(1)'s standard for issuing a TRO without notice to the adverse parties, as well as demonstrated irreparable harm, based on evidence suggesting that Lai and Jiang may be attempting to hide and evade service. ECF 26 at 6–7. The Court also found that Xu had established a likelihood of success on the merits in light of settled "public policy in favor of international arbitration." *Id.* at 7–8 (quoting *Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 836 (9th Cir. 2010)). The Court further determined that the balance of equities weighed in favor of a TRO, while the public interest factor was neutral. ECF at 9–10.

The First TRO Order enjoined Defendants from transferring, concealing, reducing, encumbering, or otherwise making unavailable the Luxury Home, located at 964 Fallen Leaf Road, Arcadia, CA 91006-1901. ECF 11. It was set to expire 14 days after its issuance (September 5, 2025). *Id.* It further required Xu to file a status report by that date addressing additional efforts to locate and/or serve Defendants. *Id.*

### B. Second TRO

On September 4, 2025, Xu filed the Second TRO Application. ECF 34. That Application included a declaration from Xu's counsel detailing "good-faith efforts to serve the TRO Packet on Defendants in this action." *Id.* ¶ 31. Those efforts included serving the First TRO Order on Sino Fortune's registered agent for service of process, an individual named Fei Pang, through in-person service at Mr. Pang's business office and by email; nailing the First TRO Order to the front door of the Luxury Home and to the mailbox of the Luxury Home; delivering via Federal Express the First TRO Order to a house in Los Altos that appears to belong to the mother of Lai (the "Los

Altos Home")[2]; nailing the First TRO Order to the door of the Los Altos Home; recording the First TRO Order against the Luxury Home at the Los Angeles County Recorder's office; mailing by first class and certified mail notices of the recording to the Luxury Home; and mailing by first class and certified mail notice of the recording of the First TRO Order to Mr. Pang. ECF 34 ¶¶ 16–30. Xu's counsel also stated that process servers confirmed the documents previously nailed to the properties and the Federal Express packages were retrieved. *Id.* ¶¶ 26–27, 29.

On September 5, 2025, the Court granted Xu's Second Ex Parte Application, prohibiting the sale or transfer of the Luxury Home for an additional 14 days. ECF 37; *see* Fed. R. Civ. P. 65(b)(2) (authorizing district court to extend TRO for 14 days "for good cause"). The Application indicated that service had been completed on Sino Fortune's registered agent for service, but no opposition to the Application was filed. Xu was ordered to file a supplemental brief explaining why his efforts at service satisfy Rule 4. *Id.*

### C. The Parties' Stipulation

On September 11, 2025, the Court approved the parties' Joint Stipulation setting a briefing schedule for Xu's request for a preliminary injunction (hereinafter, the "PI Motion"). ECF 42. The Court ordered that, pursuant to the parties' agreement, the TRO barring the transfer of the Luxury Home would remain in effect until the Court ruled on the PI Motion. *Id.* The stipulation directed Defendants to file an opposition to the PI Motion on or before October 20, 2025, and Xu to file a reply in support of the PI Motion on or before October 24, 2025. *Id.* The parties agreed to address the adequacy of service in their briefing. *Id.* The stipulation was entered into by "Plaintiff Weijie Xu . . . on the one hand, and Defendants Ganfeng Lai ("Mr. Lai"), Jintao Jiang ("Ms. Jiang"), and Sino Fortune Group LLC ("Sino Fortune"), on the other hand, by and through their respective undersigned counsel." ECF 38.

On September 5, 2025, before the stipulation was filed, counsel for Sino Fortune sent Xu's counsel a letter indicating that counsel "represents [Lai] and [Jiang] only for the purpose of a motion to quash service of process of the summons and first amended complaint and the temporary restraining order . . . and is not otherwise authorized to accept service of process on their behalf." ECF 55-1.

Sino Fortune timely filed its Opposition to the PI Motion, ECF 51, to which Xu filed a Reply, ECF 53. On October 28, 2025, Xu filed a Notice of Non-Opposition, explaining that the

[2] Xu's counsel also stated that, according to private investigators, a couple "matching the general description of Defendants Lai and Jiang have been spotted from time to time at the Los Altos Home." ECF 34 ¶ 24.

Individual Defendants had waived any objection to the preliminary injunction, including to the adequacy of service, by failing to respond to the PI Motion. ECF 55. On October 29, 2025, Sino Fortune filed a response to the Notice, stating that "[the Individual Defendants] have not filed opposition because they are residents of China and have not been served are not subject to this Court's jurisdiction until then." ECF 56. At the hearing on the Motions, counsel for Sino Fortune reaffirmed that he is not appearing in this matter on behalf of the Individual Defendants because they have not been served and reside in China.

### D. Sino Fortune's Motion to Dismiss

On October 10, 2025, Sino Fortune filed a Motion to Dismiss Xu's Petition. ECF 48. Sino Fortune argues that Xu's Petition fails to state a claim for actual or constructive fraudulent transfer, that Xu lacks standing to pursue his claims, that the Petition is time-barred, and that it also fails to state a claim for punitive damages. *Id.* at 2.

## II. LEGAL STANDARD

### A. Preliminary Injunction

A preliminary injunction is an "extraordinary and drastic remedy," *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citation omitted), that "may only be awarded upon a clear showing that the plaintiff is entitled to such relief," *Winter*, 555 U.S. at 22. A plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20.

Under the Ninth Circuit's "sliding scale" approach, the four "elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). An injunction therefore may also issue when a plaintiff raises "'serious questions going to the merits,' and a balance of hardships tips sharply in favor of plaintiff . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135; *see also Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 684 (9th Cir. 2023) (evaluating motion for preliminary injunction under "sliding scale" framework).

"The district court must support a preliminary injunction with findings of fact." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1157 (9th Cir. 2007). Given the early nature of the litigation, "a preliminary injunction is customarily granted on the basis of procedures that are less

formal and evidence that is less complete than in a trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). "The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co. Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).

### B. Motion to Dismiss

Rule 12(b)(6) permits dismissal for failure to state a claim upon which relief can be granted. "On a motion to dismiss, all material facts are accepted as true and are construed in the light most favorable to the plaintiff." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (citing *Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008). In other words, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (per curiam). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. DISCUSSION

### A. Service and Personal Jurisdiction

As a threshold matter, the parties dispute whether a preliminary injunction can be entered against the Individual Defendants, who have yet to be served in this matter. The Court previously directed Xu to file a supplemental brief explaining why Xu's proposed methods for service satisfy Rule 4. ECF 37 at 4. The parties then stipulated to address issues regarding the adequacy of service in the briefs regarding the PI Motion.[3] According to counsel for Sino Fortune, the Individual Defendants did not file an opposition because they had no obligation to do so without having been served in accordance with the Hague Convention. Xu argued, both in his reply and at the hearing, that the Individual Defendants had actual notice of the PI Motion, and that they waived objections to the service by not filing an opposition.

[3] Xu contends that counsel for Sino Fortune surreptitiously removed from the Joint Stipulation the provision that the parties agreed to defer briefing on the issue of service. ECF 41. That provision did appear, however, in the Proposed Order, ECF 38-1, which was ultimately adopted by the Court, ECF 42.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-02587-MRA-SSC | Date | December 23, 2025 |
| --- | --- | --- | --- |
| Title | *Weijie Xu v. Ganfeng Lai et al.* | | |

Rule 65(a)(1) allows the Court to issue a preliminary injunction on "notice to the adverse party." Rule 65's reference to "notice" and the very nature of preliminary relief contemplate that such relief may be issued before service has been perfected. *See Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co., Ltd.*, 80 F.4th 536, 542 (5th Cir. 2023) ("Rule 65(a) does not require service of process, but rather requires notice to the adverse party."). Thus, courts in this circuit have issued preliminary injunctions upon finding that a defendant had actual notice of the request for preliminary relief, even if service has not yet been completed. *See, e.g., Nat'l Registry of Emergency Med. Technicians v. Shimek*, No. 24-CV-05524-RFL, 2024 WL 5700869, at *1 (N.D. Cal. Oct. 15, 2024); *Wavve Americas Inc. v. Unknown Party*, No. CV-24-02667-PHX-KML, 2025 WL 834917, at *2 n.2 (D. Ariz. Mar. 17, 2025) ("A plaintiff need not complete service of process to satisfy the notice requirement for issuance of a preliminary injunction."). Similarly, courts have determined that the interests of justice warrant extending the length of a TRO beyond 14 days under Rule 65(b)(1)(B) "[w]here a plaintiff is unable to promptly serve a foreign defendant because the only proper means of serving defendants available to plaintiff cannot be completed within the usual deadlines." *Samsung Elec. Co. v. Early Bird Sav.*, No. 13-CV-3105-BEN DHB, 2014 WL 324558, at *2 (S.D. Cal. Jan. 27, 2014) (citing *H.D. Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 832 (7th Cir. 2012)).

Here, the Individual Defendants have not yet been served through the Hague Convention or by other means that comply with Rule 4. Xu's counsel has submitted declarations and supporting documents reflecting Xu's unsuccessful attempts to ascertain the Individual Defendants' whereabouts, both in China and in the United States.[4] According to a filing made by Xu after the hearing, counsel for Sino Fortune directed Xu to the Individual Defendants' addresses in China listed in the underlying arbitration documents, but subsequent communications with Chinese law enforcement indicated that the Individual Defendants do not reside at those addresses. ECF 66-2. Xu's filings indicate that a motion for leave to serve by alternative means is forthcoming. ECF 66 at 3.

Nevertheless, it appears that the Individual Defendants, who are represented in a limited capacity by counsel for Sino Fortune, have actual notice of the PI Motion. Counsel for Sino Fortune does not dispute that the Individual Defendants are married and own Sino Fortune, which has been served. Moreover, counsel for Sino Fortune has sought to raise arguments on behalf of

[4] At the hearing, Sino Fortune's counsel—despite not appearing on behalf of the Individual Defendants—represented that the Individual Defendants have continuously resided in China. Similar representations were made in response to Xu's Notice of Non-Opposition. ECF 56 at 2. The Court shares Xu's concern that Sino Fortune's counsel is making factual representations on behalf of parties who, counsel claims, he does not represent in this matter.

the Individual Defendants regarding the merits of the claims against them, without making a special appearance to contest service or personal jurisdiction. Under these circumstances, the Court concludes that Rule 65(a) authorizes preliminary relief. *See Troyer v. Shrider*, No. CV 08-5042 PSG(JWJX), 2008 WL 4291450, at *2 (C.D. Cal. Sept. 15, 2008) (reaching merits of motion for preliminary injunction "[b]ecause [d]efendant appears to have had actual notice of the motion and filed an opposition").

In addition, Petitioner has shown a "reasonable probability" that the Court has personal jurisdiction over the Individual Defendants for purposes of entering a preliminary injunction. *See Lyon v. FUNimation Prods. Ltd.*, No. CV131322MWFAJWX, 2013 WL 12122229, at *4 (C.D. Cal. Nov. 5, 2013) (finding plaintiff showed "reasonable probability" that personal jurisdiction exists for purpose of seeking preliminary injunction). Xu's counsel has filed sworn declarations and documents reflecting that Xu has tried but has not been able to locate the Individual Defendants in China, yet the Individual Defendants own and/or have recently transferred real property in California. *See Garcia v. Boddum*, No. 21-CV-04926-PJH, 2022 WL 195848, at *1 (N.D. Cal. Jan. 21, 2022) ("The court also has personal jurisdiction over defendants because they own the California real property at issue in this action."); *Square 1 Bank v. Lo*, 128 F. Supp. 3d 1257, 1262–63 (N.D. Cal. 2015) (holding, in action to void transfer of real property located in California, personal jurisdiction existed over property owner). Sino Fortune—who disclaims representing the Individual Defendants—has not provided any proof that the Individual Defendants reside in China or disputed that the Individual Defendants transferred real property to Sino Fortune in California. Thus, based on the record before the Court, including ownership and transfers of real property in California, the Court concludes that there is a "reasonable probability" that personal jurisdiction exists. *See Lyon*, 2013 WL 12122229, at *4; *see also Oas v. Rama Cap. Partners, LLC*, No. 820CV01634MCSADS, 2020 WL 7089828, at *4 (C.D. Cal. Nov. 3, 2020) ("[A] federal court is permitted to issue a temporary restraining order or preliminary injunction even where jurisdiction is in dispute." (citation omitted)).

To be clear, even though the Court finds that personal jurisdiction exists to grant preliminary relief, Xu must still comply with Rule 4. Failure to do so shall result in dismissal of this action against the Individual Defendants, which would necessarily also dissolve the preliminary injunction against them. *See F.E.A., Inc. v. Does*, No. CV 14-1115 PA (JEMX), 2014 WL 12940831, at *2 (C.D. Cal. July 22, 2014) (vacating preliminary injunction and dismissing action for lack of prosecution where plaintiff failed to serve some defendants and did not seek entry of default against served defendants).

## B. Xu's Motion for Preliminary Injunction

### *1. Likelihood of Success on the Merits*

"In order to be granted a preliminary injunction, [Xu] only needs to show the requisite combination of probable success on the merits and the possibility of irreparable injury with respect to any one of [his] claims." *Fin. Exp. LLC v. Nowcom Corp.*, 564 F. Supp. 2d 1160, 1168 (C.D. Cal. 2008).

Sino Fortune's opposition to the PI Motion and its Motion to Dismiss raise several arguments attacking the merits of Xu's claims against the Individual Defendants. For example, Sino Fortune argues that the underlying judgment rendered by the Chinese court is "not a judgment." ECF 51 at 9–11. It also argues that the claim to enforce the arbitration award under 9 U.S.C. § 907 is untimely because it was brought more than three years after the award was rendered. ECF 48 at 14–15. But these arguments pertaining to Xu's first three claims are not properly before the Court because each of those claims is brought against the Individual Defendants only, and Sino Fortune may not assert arguments on their behalf while simultaneously claiming that the Individual Defendants have not been served. *See, e.g.*, *Lesofski v. Lash*, No. CV 11-840 TUC DCB, 2012 WL 4711909, at *8 (D. Ariz. Oct. 3, 2012) ("The Court will not hear arguments from Defendant McKenzie on behalf of unserved Defendants unless and until, Defendant McKenzie's attorneys file a Notice of Appearance on behalf of such defendants."); *Gardner v. Naphcare, Inc.*, No. 3:24-CV-00277-MMD-CLB, 2024 WL 4957336, at *2 n.3 (D. Nev. Oct. 4, 2024), *report and recommendation adopted in part, rejected in part*, No. 3:24-CV-00277-MMD-CLB, 2024 WL 4868350 (D. Nev. Nov. 21, 2024) ("[T]he Court does not find it appropriate to hear argument from Defendant Naphcare on behalf of these unserved Defendants unless and until Defendant Naphcare's attorneys file a Notice of Appearance on behalf of such defendants."). These arguments can be raised through a proper vehicle when the Individual Defendants appear in this action.

As for Xu's fourth cause of action against all Defendants, the Court finds that Xu has adequately pled a claim for constructive fraudulent conveyance under California Civil Code § 3439.04 *et seq.*, and also demonstrated that he is likely to prevail on that claim or at least raised serious questions going to the merits of that claim. "A fraudulent transfer under the [Uniform Voidable Transactions Act ("UVTA")] is a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim." *Potter v. All. United Ins. Co.*, 37 Cal. App. 5th 894, 903–04 (2019) (internal citations and quotations omitted). "[A] transfer can be invalid either because of actual fraud . . . or constructive fraud." *Id.* Under the UVTA, "[a] debtor's transfer is fraudulent as to a creditor

whose claim arose before the transfer was made if the debtor (1) did not receive reasonably equivalent value in exchange, and (2) was insolvent at that time or became insolvent as a result of the transfer." *Sequoia Prop. & Equip. Ltd. P'ship v. United States*, No. CV-F-97-5044-LJO, 2002 WL 31409620, at *16 (E.D. Cal. Sept. 19, 2002) (citing Cal. Civ. Code § 3439.05); *see also Albergo v. Immunosyn Corp.*, No. 09CV2653 DMS (MDD), 2012 WL 12953736, at *6 (S.D. Cal. June 19, 2012) ("To prove a constructive fraudulent transfer, a plaintiff must show, in lieu of actual intent, that the debtor made a transfer 'without receiving a reasonably equivalent value in exchange' and 'was insolvent at that time or that the debtor became insolvent as a result of the transfer . . . .'" (citing Cal. Civ. Code § 3439.05)). Importantly, under the UVTA, "[a] debtor who is generally not paying his or her debts as they become due is presumed to be insolvent." Cal. Civ. Code § 3439.02(c)

In its Motion to Dismiss (also incorporated into its Opposition to the PI Motion), Sino Fortune argues that Xu has failed to state a claim for constructive or actual fraudulent conveyance because the Luxury Home was transferred from Sino Fortune to Jiang on March 15, 2024, for purposes of financing, and Jiang held it for less than one month before the Luxury Home was transferred back to Sino Fortune on April 8, 2024. ECF 48 at 12–13. Sino Fortune also claims that Xu alleges no facts showing the debtor was insolvent or became insolvent because of the brief transfer. *Id.* at 13. Xu argues he is likely to prevail on the claim because the fact that the April transfer was "for the purpose of facilitating refinancing" is unsupported by admissible evidence and in any event would not provide a defense to the fraudulent conveyance claims. ECF 53 at 23–24.

First, the Court finds that Xu has submitted sufficient evidence that Jiang transferred the Luxury Home to Sino Fortune without receiving a reasonably equivalent value in exchange. The Luxury Home was transferred to Sino Fortune through a gift deed. ECF 24-7. Sino Fortune does not dispute that Jiang exchanged no consideration for the transfer. Rather, it insists that Sino Fortune owned the property beginning on December 14, 2017, and transferred it to Jiang for less than a month. ECF 48 at 12–13. But that would seem to support that the timing and manner of the initial transfer is also suspect and thus support Xu's claim for actual fraudulent conveyance. *See infra* Section III.E.

Second, Xu has sufficiently demonstrated that the Individual Defendants were not paying their debts as they became due, which gives rise to a presumption that they were insolvent at the time of the transfer. *See* Cal. Civ. Code § 3439.02(c). The documents attached to Xu's complaint and TRO Applications reflect that the Individual Defendants defaulted on the underlying loan adjudicated in the foreign arbitration, failed to pay the award rendered by the Shenzhen Arbitration Commission, and later failed to pay the award confirmed by the Chinese

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-02587-MRA-SSC | Date | December 23, 2025 |
|---|---|---|---|
| Title | *Weijie Xu v. Ganfeng Lai et al.* | | |

court. ECF 24-2; ECF 24-1, ECF 24-5. Moreover, the Individual Defendants each appear on a list maintained by the Supreme Court of China which, according to Xu, is "used to track and enforce restrictions on the country's worst debt defaulters." ECF 25-1 at 11. Indeed, Sino Fortune does not meaningfully dispute that Xu was a creditor to whom the Individual Defendants failed to pay debts they owed. Nor does Sino Fortune dispute that the Individual Defendants appear on the "Discredit Persons" list in China, other than to object to the list as improper character evidence.[5] There is no evidence in the record to rebut the presumption that the Individual Defendants were insolvent at the time of the April 2024 transfer of the Luxury Home.

Sino Fortune's Motion to Dismiss also argues that Xu lacks standing to pursue claims against it because Sino Fortune was not a party to the underlying loan agreement or to the arbitration proceedings. ECF 48 at 13. In other words, Sino Fortune argues that Xu's injury is "not fairly traceable" to Sino Fortune. *Id.* at 13–14. Xu responds that Sino Fortune's participation in the April 2024 transfer of the Luxury Home renders the injury "fairly traceable" to Sino Fortune. ECF 57 at 13–14.

The Court agrees with Xu. "Transferees are necessary parties 'in an action to declare a transfer void as fraudulent.'" *Diamond Heights Village Ass'n, Inc. v. Financial Freedom Senior Funding Corp.*, 196 Cal. App. 4th 290, 304 (2011) (quoting *Heffernan v. Bennett & Armour*, 110 Cal. App. 2d 564, 586–87 (1952)). Here, Xu alleges and provides evidence that Sino Fortune was the transferee that received the Luxury Home as part of Jiang's purportedly fraudulent conveyance. Sino Fortune does not dispute that it received the Luxury Home from Jiang. Thus, the fact that Sino Fortune was not a party to the underlying arbitration award that Xu seeks to enforce is not relevant to whether Sino Fortune is a proper defendant. *Palmdale 3D, LLC v. Calamos*, No. CV-14-7523-MWF PLAX, 2015 WL 71561, at *5 (C.D. Cal. Jan. 5, 2015) ("As recipients of allegedly fraudulent transfers, [defendants] are not entitled to be dismissed.").

Based on the record before it, the Court concludes that Xu has shown a likelihood of success on, or at least serious questions going to, the merits of its claim for constructive fraudulent conveyance. Because Xu's likelihood of success on that claim is sufficient to support the relief

[5] Sino Fortune argues that the Court should not consider Xu's evidence that Jiang and Lai appear on a "Discredit Persons" list compiled by the Chinese government because it is "inadmissible character evidence" under Federal Rule of Evidence 404. But the Court does not consider the "Discredit Persons" for the purpose prohibited by Rule 404—*i.e.*, to "prove that on a particular occasion the person acted in accordance with the character or trait." Rather, the Court views this evidence as probative of the risk that Respondents will, in the future, attempt to conceal or transfer assets for the purpose of evading creditors.

sought—*i.e.*, a prohibition on the sale or transfer of the Luxury Home—the Court does not reach whether Xu is likely to succeed on the merits of the remaining claims. *See Sun v. Santacruz*, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *5 (C.D. Cal. Aug. 26, 2025).

### 2. *Irreparable Harm*

The Court previously granted Xu a TRO on the grounds that Xu had adequately established the risk of dissipation in the absence of emergency relief. ECF 26 at 8–9. The Court's reasoning in its First TRO Order is incorporated herein.

Sino Fortune's primary argument that there is no risk of irreparable harm is that Xu recorded a *lis pendens* on the Luxury Home on August 26, 2025. ECF 51 at 13–14. According to Sino Fortune, the *lis pendens* provides "superior relief" because it "clouds the title of any buyer, arms-length or not," which "impedes a subsequent sale or encumbrance of the property until the litigation is resolved." ECF 51 at 14-15, 19-20. In response, Xu correctly points out that the notice of *lis pendens* and the preliminary injunction serve different purposes. ECF 53 at 7–8. The *lis pendens* "does not prevent [defendant] from further encumbering or impairing the value of the property." *Hickman v. Turrito*, No. 1:06-CV-151, 2007 WL 1080090, at *2 (E.D. Tenn. Apr. 9, 2007) (applying analogous state law). Indeed, the California statute authorizing the recording of a notice of *lis pendens* contemplates that such a notice may not suffice to remedy potential harm arising from the sale of an asset, because it specifically provides that "[n]othing in this title precludes any party from seeking an . . . injunction . . . in connection with a real property claim." Cal. Civ. Proc. Code § 405.8. Moreover, while the notice of *lis pendens* makes the possibility of the transfer of the Luxury Home less probable, Xu has demonstrated that there is still a risk that Defendants may dissipate assets given their history of evading creditors. Thus, the Court finds that Xu has established irreparable harm to warrant a preliminary injunction.[6]

### 3. *Balance of Equities & Public Interest*

The Court previously determined that the balance of equities weighed in favor of granting

[6] Sino Fortune argues that certain statements in the Declarations of Minyao Wang contain hearsay or multiple levels of hearsay based on statements by third-party investigators or process servers. ECF 51 at 22. But it is settled law that "a preliminary injunction may be granted based on affidavits or the allegations in a 'verified complaint,' despite their lack of conformity with the Federal Rules of Evidence regarding hearsay and personal knowledge." *Neighborhood Assistance Corp. of Am. v. First One Lending Corp.*, No. SACV 12-463 DOC MLGX, 2012 WL 1698368, at *14 (C.D. Cal. May 15, 2012). Thus, the Court overrules Sino Fortune's remaining evidentiary objections.

emergency relief, citing Xu's strong interest in the Luxury Home and the fact that the injunction would freeze real property. ECF 26 at 9–10. Sino Fortune argues that the balance of equities weighs against an injunction that would "be based on interpretation by an unqualified foreign law expert and grounded on evidence which has almost no weight." ECF 51 at 25. For the reasons discussed above, the Court's reasoning does not depend on any application of foreign law, and the Court finds Sino Fortune's evidentiary objections unavailing. Thus, consistent with its First TRO Order, the Court finds the balance of equities tips in Xu's favor. As for the public interest factor, "[w]hen the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be 'at most a neutral factor'" in the preliminary injunction analysis. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138-39 (9th Cir. 2009) (quoting *Berhardt v. L.A. Cnty.*, 339 F.3d 920, 931 (9th Cir. 2003)). Accordingly, this factor is neutral.

***

For the foregoing reasons, the *Winter* factors weigh in favor of granting a preliminary injunction. The Court therefore **GRANTS** the PI Motion.

### C. Sino Fortune's Motion to Dismiss

Sino Fortune moves to dismiss Xu's FAC on the grounds that Xu has failed to state a claim for actual or constructive fraudulent transfer. The Court addressed several of the arguments raised by Sino Fortune above. As to the remaining arguments, the Court concludes that (1) they are not properly before the Court because they relate to the merits of Xu's claims against the Individual Defendants, or (2) they do not establish that Xu has failed to state a claim.

As to Xu's claim against Sino Fortune for actual fraudulent conveyance, the Court concludes that this claim has been adequately pled.[7] The UVTA enumerates certain "badges of fraud" that courts may apply to divine fraudulent intent. Cal. Civ. Code § 3439.04(a)(2). These non-exhaustive factors include whether: (1) "the transfer or obligation was to an insider;" (2) "the debtor retained possession or control of the property transferred after the transfer;" (3) "the transfer or obligation was disclosed or concealed;" (4) "before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;" (5) "the transfer was of substantially all the debtor's assets;" (6) "the debtor absconded;" (7) "the debtor removed or

[7] The Court's decision to grant the preliminary injunction rests on its determination that Xu has demonstrated a likelihood of success on the merits of the constructive fraudulent conveyance claim. In determining that the actual fraudulent conveyance claim has been adequately alleged to survive a 12(b)(6) motion, the Court reaches no conclusions as to whether that claim is likely to succeed on its merits.

concealed assets;" (8) "the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;" (9) "the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;" (10) "the transfer occurred shortly before or shortly after a substantial debt was incurred;" and (11) "the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor." *Id.* "The presence of a single badge of fraud may spur mere suspicion; the confluence of several can constitute conclusive evidence of actual intent to defraud, absent 'significantly clear' evidence of a legitimate supervening purpose." *In re Acequia, Inc.*, 34 F.3d 800, 806 (9th Cir. 1994) (internal quotation marks omitted). At the same time, "these factors do not create a mathematical formula to establish actual intent." *Filip v. Bucurenciu*, 129 Cal. App. 4th 825, 834 (2005). That is, "[t]here is no minimum number of factors that must be present before the scales tip in favor of finding of actual intent to defraud." *Id.* Instead, the badges of fraud are "meant to provide guidance to the trial court, not compel a finding one way or the other." *Id.*

Accepting Xu's allegations as true, as it must in ruling on Sino Fortune's 12(b)(6) motion, the Court concludes that Xu has adequately stated a claim for actual fraudulent conveyance. Xu alleges, *inter alia*, (1) that the Luxury Home was transferred to an insider (*i.e.*, Sino Fortune, alleged to be an alter ego of the Individual Defendants), (2) the Individual Defendants retained possession of the Luxury Home after the transfer, (3) the transfer was not disclosed to Xu or any other creditor of the Individual Defendants, and (4) the Individual Defendants had incurred significant civil liabilities before the transfer was initiated. ECF 24 ¶ 97.

Sino Fortune relies on factual assertions extrinsic to the FAC to argue that the transfer was not fraudulent. For instance, Sino Fortune claims that the original transfer of the property was to allow Jiang to obtain financing. ECF 48 at 12–13. But the Court cannot consider those extrinsic assertions in resolving Sino Fortune's motion. *See* Fed. R. Civ. P. 12(d).[8] Sino Fortune offers

---

[8] In connection with its Motion to Dismiss, Sino Fortune asks to the Court to take judicial notice of various documents concerning the Luxury Home on the grounds that they are "matters of public record." ECF 48-4. At the motion to dismiss stage, a court "may take judicial notice of matters of public record," but "cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 998, 999 (9th Cir. 2018). Thus, although the Court may take judicial notice of the deeds of the property, it cannot consider the extrinsic facts Sino Fortune attaches to them (*i.e.*, that the transfer was for the purpose of financing), nor can it draw the inferences that Sino Fortune asks (*i.e.*, that the documents negate fraudulent intent). *See Nogali v. Transcon Fin., Inc.*, No. EDCV1400206VAPDTBX, 2014 WL 12968085, at *6 (C.D. Cal. July 3, 2014) ("On a motion to dismiss . . . the Court may not consider

no authority that explains why Petitioner's allegations are legally insufficient, and courts in this district have declined to dismiss actual fraudulent conveyance claims based on similar allegations. *See, e.g.*, *Wimbledon Fund v. Graybox, L.L.C.*, No. 215CV06633CASAJW, 2015 WL 7428513, at *5 (C.D. Cal. Nov. 19, 2015); *Bondit, LLC v. Hallows Movie, Inc.*, No. CV 19-09832-AB (RAOX), 2020 WL 7777992, at *15 (C.D. Cal. Apr. 1, 2020).

Finally, with respect to Xu's claim for punitive damages, Sino Fortune acknowledges that California law permits the recovery of punitive damages upon a showing that "the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). For the reasons explained above, Xu has stated a claim for actual fraudulent conveyance supported by allegations that Defendants acted with fraudulent intent in transferring the Luxury Home to evade creditors. "Punitive damages are . . . properly awarded on the fraudulent transfer causes of action." *Chiteishvili v. Vertifx LLC*, No. 217CV8711JFWRAOX, 2018 WL 6716690, at *5 (C.D. Cal. Dec. 21, 2018) (citing *Tassone v. Tovar*, 28 Cal. App. 4th 765, 767 (1994)). Xu has therefore sufficiently stated a claim for punitive damages.

For these reasons, the Court **DENIES** Sino Fortune's Motion to Dismiss.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Xu's Request for a Preliminary Injunction [34] and **DENIES** Sino Fortune's Motion to Dismiss [48].

The Court further **ORDERS** as follows:

1. Defendants Sino Fortune Group LLC, Ganfeng Lai, and Jintao Jiang are enjoined from transferring, concealing, reducing, encumbering, or otherwise making unavailable the Luxury Home, located at 964 Fallen Leaf Road, Arcadia, CA 91006-1901, for the duration of this litigation.

2. Petitioner shall properly serve the Individual Defendants in compliance with Rule 4. Failure to do shall result in dismissal of this action against the Individual Defendants. If Petitioner intends to file a motion for leave to serve by alternative means, it shall do so within **seven (7) days** of this Order. That motion shall specifically identify all measures previously undertaken to effectuate service and provide analysis and citations to relevant legal authority as

---

evidence outside of the pleadings and must draw all reasonable inferences in favor of the Plaintiff.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-02587-MRA-SSC | Date | December 23, 2025 |
| Title | *Weijie Xu v. Ganfeng Lai et al.* | | |

to why Petitioner's proposed methods satisfy Rule 4.

**IT IS SO ORDERED.**

- : -

Initials of Deputy Clerk pd/mku